UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:19cr99(VAB) |
| | : | |
| v. | : | |
| | : | |
| KISHORE BABU AMMISETTI | : | December 2, 2019 |

### THE GOVERNMENT'S SENTENCING MEMORANDUM

On April 17, 2019, the defendant Kishore Babu Ammisetti waived indictment and pled guilty to an information charging him with bank fraud in violation of 18 U.S.C. § 1344. The Government submits this sentencing memorandum requesting the Court to impose a fair and just sentence that reflects the seriousness of the criminal conduct but is not greater than necessary to achieve all of the purposes of sentencing.

The Government agrees with the advisory guideline range set forth in the PreSentence Report ("PSR") of 33 to 41 months. In the plea agreement, the defendant agreed to waive his right to appeal a sentence of 41 months or less.

### INTRODUCTION

An appropriate sentence must also take into account the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a) (1). In addition, the Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, as well as to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant as well as educational, medical or other treatment. *Id.* at § 3553(a)(2). In addition, the Court must consider the kinds of sentences available, any pertinent policy

1

statements, the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. *Id.* at § 3553(a)(3)-(7

## DISCUSSION

### A. The Nature and Circumstances of the Offense

The facts surrounding the defendant's conduct are set forth in detail in the Pre-Sentence Report ("PSR") and are not in dispute. In summary, between July 2017 and August 2018, Ammisetti used the anonymity of the internet to deceive hundreds of people and to enrich himself by hundreds of thousands of dollars. Ammisetti preyed primarily on people of Indian descent who used Facebook Marketplace and other Internet-based sites to advertise items for sale or places for rent. Ammisetti, using one of dozens of aliases, generally communicated with his victims in their native language to build trust.

While "negotiating" the sale, Ammisetti would gather the victim's banking information, under the guise of depositing money into their account. However, instead of making a deposit, Ammisetti would contact the victim's bank and, posing as the victim, claim that he made an ATM deposit that was not registered in the account. The bank would provide a provisional credit into the victim's account while they investigated the unregistered ATM deposit. The amount of the provisional credit was often 10 times the amount that was due to the victim. For instance, if the item was posted for sale for $200, Ammisetti would tell the bank that he deposited $2,000 via ATM so that the bank would then post a provisional credit in the amount of $2,000. Ammisetti would then contact the victim and explain that he accidentally made a deposit with an extra zero and request the victim to refund the money. The victim could check their bank statement and see that money that was deposited, but was otherwise unaware that the

deposit was a provisional credit that would be reversed after the bank realized that there was no unregistered ATM deposit. The victim would then transfer the requested amount through a peer to peer transfer to Ammisetti. Ammisetti often pretended that the first transfer did not work and would request the victim to send it again. Thus, under the example above, Ammisetti would gain $4,000 from the victim before the fraud was revealed. Ammisetti engaged in this scheme over and over and over again, amassing more than $860,000.

### B. The Defendant's History and Characteristics

Based on the information provided in the PSR and in the defendant's Supplemental Memorandum in aid of Sentencing, the defendant was raised by a loving family who supported him both emotionally and financially. He attended college in India, graduate school in London and was an accomplished student and athlete. Unlike many defendants before this Court, Ammisetti's upbringing is quite idyllic and provides little insight into his criminal behavior.

In July 2013, the defendant arrived in the United States on an F-1 student visa. The visa was issued for the purpose of attending a graduate program at Farleigh Dickenson University. Ammisetti was privileged to be accepted into a program that would have allowed him to earn a second master's degree. However, Ammisetti failed to follow through and the university terminated his visa on July 3, 2014. Ammisetti remained unlawfully in the United States since that date, working as a manager at a liquor store in Connecticut.

### C. Seriousness of the offense, Respect for the law, Just punishment, Deterrence and Protection of the Public.

The seriousness of Ammisetti's conduct can be measured by numbers. There is the loss number of more than $860,000. There is the number of victims –approximately 500 individuals.

There is also the number of months – 13 – in which Ammisetti engaged in this conduct.  All of these numbers show a significant fraud perpetrated on numerous innocent people over an extended period of time.  But the numbers do not tell the whole story.  The Government has received approximately 40 victim impact statements from individuals who were defrauded by Mr. Ammisetti – generally in amounts between $2,000 and $4,000.  Their statements provide insight into the seriousness of the offense and the need for punishment and general deterrence.  Below are a sample of some of those victim impact statements:

- I have come to the US leaving behind my Parents and Family back in India after 10 years of long struggle in my Profession and crossing all hurdles in getting a Job in the U.S. This is my hard earned money which I get as salary after working long hours in Office and sacrificing time with my toddler daughter. I do not get enough time to spend with my daughter or Family who is with me in the U.S because of my Job and work commitments. Despite all the hardships, struggle and sacrifices we make to earn the money and one fine day some fraudster steals them all. This is not at all good. Its not just the money that is lost. The **grief, pain agony and the mental trauma** that I have undergone is beyond words that I can explain. I could not eat, sleep or able to stand on my feet for several months.  I still remember how many calls every single day I have made to the Bank in the hope of getting the money back. Even today the day and time of the fraud haunts me and makes me sleepless. I lost my Job because of this trauma and depression. I am sure every victim should have gone through the same experience.

- Because of the fraud he had done to me, I lost an amount of $3508 which is a huge amount for me, a middle class person earning a handsome of money to run his family for daily needs with minimal savings.

- This person contacted me under the name Keerthi Nandhini Namburi on facebook saying she is interested in renting one of the bedrooms in my apartment…. She said she meant to send me $200 as the booking amount but by mistake transferred $2000. She said she really need that money back as her account had gone in negative balance. I checked my account and I could see a 2000 dollar credit in my account. So I thought this is her money and I should send it back to her as soon as possible. And I immediately transferred her 2000 dollars. Then after some time she said the transfer I made never hit her account as the transaction was made through chase (which made no sense to me). And then she asked me to transfer the money again….At the end, I ended up losing **4000 dollars** for nothing and learnt a really hard lesson in my life. I was a student at that time and losing

4000 dollars was really really hard for me. I still cant believe some people could go to such extents to steal money from others.

- I am house wife and started a facebook page to sell indian women dresses online around beginning of May 2018. Facebook users started liking my page and enquired about my dresses online and slowly customers started chatting with me for dresses and I have started selling the clothes. Customers use to pay me via cash, PayPal and Zelle through Bank of America. One Friday on June 29th 2018 the above mentioned Defendant Kishore Babu Ammisetti reached out to me in the name of Alekhya Sudula for enquiring the price of dress type saree and dress type Kurti .Both of them cost around 125$ in total. Alekhya have enquired about my name and Zelle Bank Account number and he sent $1250 instead of $125. Alekhya reached out to me saying that she made a mistake and asked for a refund for the excess money. I returned her $1125 on my first transaction. She fooled me denying that she did not get the money from me and she asked her to send the money again. I trusted her and sent another $1125 again to her so totally I sent $2250 dollars from my bank account. After all of these I have called the bank of america customer service and found that the initial deposit made by Alekhya itself was never made to my account thus I have lost all my $2250 dollars on this trial made by the defendant . This has caused me more sadness and depression and i lost confident on my business and I stopped my business in a month time

- I would also like to throw some light on yet another attempt I made to get my money back- I reached out to the criminal via the email id he used to commit the crime. Because I was diagnosed with ovarian tumor just a few days before I lost my money to the criminal, I wanted to give my best to get that money back for my treatment. This was my last hope considering the police department clearly said they cannot help me in this case. It is already hard enough for 23 year old to suffer from something like this, and loosing this money did not really make things any easier, especially when I was still on a student visa. As a result of this criminal activity I had to borrow money from family and friends, and am still paying it back with other loans and responsibilities I have on me. I urge you to get me and every other victim the justice we deserve.

- The Fraud occurred when I was trying to look for replacement roommate as I was moving out of Dallas and instead found a girl interested to buy my furniture(facebook). I finalized the deal to sell my bed for $200 with a person named Keerthi Namburi. She requested for my bank account number and DOB saying she will be using her credit card to transfer the amount. I saw a credit of $2000 the following day in my bank account with transaction name "temporary credit reversal". When I reached out to her informing the same, She informed me that it was a mis-type from her end and requested me to send back the $2000. I believed her and initiated 2 transaction of worth $1800 and $200 to the emailed she provided "keerthi.namburi7@gmail.com". She later sent me a screen shot of an email which she claimed to receive from chase bank saying a credit of $2000 to her account. She told me that the transaction I made seems to land in one of her old accounts with chase which she closed along ago. She told me to wait until she resolves it with

customer service. The very next day I again received a credit of $2000 with transaction name "temporary credit reversal". She conveyed that the customer service was helpful enough to reverse the transactions I made and requested me send the $1800 (balance after the sale) to her brother's email address sudheer.pulimi92@gmail.com" as the bed cost is $200. After a few days I received a few emails from my bank saying that two temporary credits of $2000 each has been made as I raised a complaint saying that the money deposits I made through ATM's has not been reflected in my bank account and these deposits will be debited as they didn't find any records of money deposits through ATM's into my Account. I have neither raised any complaints nor made any money deposits to my account. Keerthi Namuri used my identity to raise the complaint which ultimately resulted in temporary credits of $2000. I misunderstood these credits to be from her bank account and helped her in getting back the extra amount. The whole conversation occurred in facebook messenger and whats app. Most of the communication has been done in English/Telugu languages.

- The letters and emails I received from U.S.Department of Justice regarding the arrest of Kishore Babu Ammisetti has brought lot of relief and happiness to me. I'm v[ery] glad that this criminal is apprehended and can't cheat other innocent small business owners anymore. He stole $2100 from me and has given me lots of grief. I've a small clothing business and a lot of my business runs on mutual trust. Customers look at cloth and select and order a dress and then pay me. I had many good people buy from me until this guy presented himself online. He posed as a girl and talked to me in my local language Telugu and used my trust against me. This is the first time in my life I got swindled like this and it caused me lot of pain and grief. I urge the justice department to not just deport this guy back to India. Please recover all the money he made or sent to India. I'm sure he must have saved or spent on real estate etc in India or here in USA. Please make sure you take away all properties etc. on his name. Just by deporting him, he'll happily go to India and live off the $800,000 he stole, like a king. This guy has to be punished and made an example so no other person dares to cheat again like this. I'd be very happy if I can get my money back .Please let me know if there's any possibility of recovering my stolen money.

- I would like to bring to your attention the loss I incurred amidst this scam and provide my justification for the claim. As a young engineering student studying at the University of California, Berkeley, I was saving money from small jobs when suddenly I lost the amount of $2000 due to the fraudulent event during the beginning of my summer job. As a result of the fraud, Bank of America closed their relationship with me and closed my credit card as well as my checking and savings accounts. It had taken me several years to build this relationship but took this once incident to lose it all. I was forced to make updates to my summer job as well as open a new account without any banking official backing me up from Bank of America. In this case, I not only lost the money, but lost years of banking relationship. Further, at a young age of 20, I endured severe emotional trauma as I no longer could trust the person who was communicating with me and asking

me for a refund of money over and over again as if I owed him more and torturing me with his words on Facebook.

### D.  Defendant's Mitigation and Departure Arguments

1. Departure/variance for diminished mental capacity.

Defendant requests this Court to depart from the sentencing guidelines because he has a gambling compulsion.  Some courts have held that § 5K2.13 permits a departure where a mental condition provides a motive for the crime as opposed to contributing directly to the commission of the offense.  *United States v. Cockett*, 330 F.3d 706 (6th Cir. 2003); *United States v. Sadolsky*, 234 F.3d 938, 943 (6th Cir. 2000) (direct causal link is not required where defendant's gambling disorder motivated the criminal behavior, given that he already had "maxed out" his credit line before resorting to fraud to pay gambling debts); *United States v. Liu*, 267 F. Supp. 2d 371 (E.D.N.Y. 2003) (downward departure warranted based on significantly reduced mental capacity attributed to defendant's pathological gambling addiction).  Recently, this court approved a departure based on a gambling disorder where a chief financial officer embezzled hundreds of thousands of dollars over the course of three years.  *United States v. Chan,* 2018 US Dist. LEXIS 102050 (D.Conn  June 19, 2018).  In *Chan,* however, the defendant had a decades-long gambling disorder and he even continued to gamble while knowing he was under investigation.  *Id.* at *7.

Other courts have exercised their discretion and denied a departure pursuant to 5K2.13. *US v. Grillo,* 111 F3d. Appx 631 (2d Cir. 2004) (affirming the district court's exercise of its discretion to not depart from the sentencing guidelines based on a gambling addiction where the district court recognized the discretion to depart but declined to do so.); *United States v. Regensberg,* 635 F.Supp.2d 306, 307 (SDNY 2009) (denying a downward departure pursuant to 5K2.13 for a pathological gambling disorder but considering it under the 3553 factors).

The Government agrees that the information provided in the Defendant's Supplemental Memorandum should be considered by the Court under the 3553 factors, but when balanced against the nature and circumstances of the offense, the defendant's privileged upbringing and the need to protect the public and provide general deterrence, the sentence of a year and a day requested by the defendant is insufficient.

2. **Risk of recidivism and Incremental punishment**.

The defendant argues that a below-guideline sentence is appropriate because Ammisetti has a low risk of recidivism and because he is a first time offender. These arguments fail to adequately consider the fact that Ammisetti defrauded approximately 500 separate people over approximately 13 months. This was not a single blemish in a life otherwise well-lived. This was an individual who created false identities, false bank accounts and numerous phone numbers in order to conceal his true identity so that he could perpetrate a fraud on innocent people over and over again. That fact that he does not have any criminal history is a tribute to his ability to mask his identity and to delay the true extent of his fraud from being uncovered. Compare *United States v. Cabrera*, 567 F. Supp. 2d 271 (D. Mass. 2008) (providing a downward departure based on the defendant's minimal role where he was a first-time offender and was homeless. Here, Ammisetti role was instrumental and he has a privileged upbringing, including a master's degree in Biomedical Modeling and Informatics from Middlesex University in London, England).

3. **Restitution**

Finally, defendant argues that he should be given a below-guideline sentence because he will be deported back to India. He expressed his intent to start working so that he can earn money and begin making restitution payments. At this time, the Government has received

approximately 40 restitution requests totaling $93,844 in losses. Ammisetti has not made a single payment in restitution. Once he is deported to India, any restitution order is likely to be unenforceable.

After consideration of all of the circumstances, the Government requests the Court to impose a fair and just sentence that reflects the seriousness of the criminal conduct but is not greater than necessary to achieve all of the purposes of sentencing.

> Respectfully submitted,
> JOHN H. DURHAM
> UNITED STATES ATTORNEY
>
> /s/
> _____
> NANCY V. GIFFORD
> ASSISTANT UNITED STATES ATTORNEY
> Fed. Bar. No. ct16324
> Office of the U.S. Attorney
> 450 Main Street, Room 328
> Hartford, CT 06103
> 860-947-1101

## CERTIFICATION

I hereby certify that on December 2, 2019, the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

> /s/
> _____
> Nancy V. Gifford
> Assistant U.S. Attorney